UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CARLOUS T. LEWIS** | **CIVIL ACTION NO. 07-1227** |
| **VS.** | **SECTION P** |
| **RICHARD BRAZZEL, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on July 26, 2007, by *pro se* plaintiff Carlous T. Lewis. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Franklin Parish Detention Center, Winnsboro, Louisiana, but his complaint centers around his incarceration at the Union Parish Detention Center (UPDC), Farmerville, Louisiana in December 2006. Plaintiff has sued UPDC Acting Warden Richard Brazzel, former UPDC Captain James Harris, Union Parish Sheriff Bob Buckley, the UPDC and the Union Parish Courthouse. Plaintiff prays for compensatory and punitive damages totaling $1 million.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous.

### *Statement of the Case*

On May 19, 2006, plaintiff was incarcerated at the UPDC. On December 4, 2006,

Warden Brazzel and Captain Harris ordered Sgt. Adams to take plaintiff's tennis shoes. On December 6, 2006, plaintiff requested that his shoes be returned. The defendants refused. On that same date, plaintiff was transported to the Union Parish Courthouse for a court appearance; he wore shower slippers to the courthouse. As plaintiff was descending the stairs, one of his slippers came off. When he tried to retrieve the slipper, plaintiff lost his balance and tumbled down the stairs.

Plaintiff was transported to the Union General Hospital where he was examined by a physician. The physician concluded that plaintiff had sprained his neck and back, and prescribed "muscle relaxers" and "pain relievers"; however, upon his return to UPDC, plaintiff was given Ibuprofen[1] for pain.

Plaintiff claims that he still experiences pain and his requests to see a chiropractor have been ignored. Plaintiff claims that UPDC has begun charging plaintiff for medical visits.

He complains that he was required to stay in the "hole" for 32 days but was not charged with a disciplinary violation.

On December 31, 2006, plaintiff's tennis shoes were returned.

Plaintiff complains that male prisoners are required to use the stairs at the Union Parish Courthouse, whereas female inmates are allowed to use the elevators. He contends that this is a "clear case of discrimination against male prisoners."

---

[1] "Ibuprofen" is a nonsteroidal anti-inflammatory drugs (also called NSAIDs) used to relieve some symptoms caused by arthritis (rheumatism), such as inflammation, swelling, stiffness, and joint pain. Some of these medicines are also used to relieve other kinds of pain or to treat other painful conditions, such as gout attacks; bursitis; tendinitis; sprains, strains, or other injuries; or menstrual cramps. Ibuprofen and naproxen are also used to reduce fever. See Medline Plus, a service of the Untied States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202743.html

On February 19, 2007, Captain Harris ordered Sgt. Smith to move plaintiff to an upper bunk. When plaintiff complained to the medical department, they refused to afford plaintiff lower-bunk status.

On February 20, 2007, plaintiff filed a pleading entitled "Writ of Habeas Corpus" in the Third Judicial District Court, Union Parish. In this pleading plaintiff complained of the events and conditions mentioned above and prayed for punitive and compensatory damages. Plaintiff did not allege that his custody was in violation of the Constitution and laws of the United States or the Constitution and laws of the State of Louisiana and, plaintiff did not seek release from custody. [doc. 1, pp. 6-11]

Petitioner signed his civil rights complaint on July 7, 2007.

On August 16, 2007, plaintiff was transferred to the Franklin Parish Detention Center.

*Law and Anal;ysis*

*1. Frivolity Review*

When a prisoner is allowed to litigate a civil rights complaint *in forma pauperis,* the district court may dismiss the case at any time if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C.A. § 1915(e)(2)(B); 28 U.S.C.A. §1915A; 42 U.S.C.A. § 1997e(c).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998)

(quotation omitted). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.1998).

While district courts are required to construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), they are nonetheless given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under § 1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*, 923 F.Supp. 931, 942-43 (S.D.Tex.1996). However, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). See *Wesson v. Ogleby*, 910 F.2d 278, 281 (5th Cir.1990) ("An *IFP* complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under [§ 1915(d)(2)(B) ]."). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a concise statement of his claims for relief. As is shown hereinafter, his claims are clearly frivolous and dismissal on that basis is therefore recommended.

## 2. Negligence

"[Section] 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho v. City of Houston*, 185

F.3d 521, 525 n. 3 (5th Cir.1999). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff implies that he has been subjected to cruel and unusual punishment thus implicating a violation of the Eighth Amendment.

Among other things, plaintiff complains that the defendants "forced" him to wear shower slippers to court, and thus suggests that the defendants should be liable for the injuries he sustained when he lost his balance and tumbled down the stairs of the Union Parish Courthouse. This claim is frivolous. At best, plaintiff's complaint can only be construed to raise a claim under a theory of negligence, and negligence is not a theory for affixing liability under §1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Benavides v. Santos*, 883 F.2d 385, 387 (5th Cir.1989).[2]

Furthermore, "[i]n operating a prison, ... the state is not constitutionally required to observe all the safety and health standards applicable to private industry." *Sampson v. King*, 693 F.2d at 569 (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1159 (5th Cir.1982)). The state is not "bound by the standards set by the safety codes of private organizations[,]" and any "[s]tandards suggested by experts are merely advisory." *Sampson v. King*, 693 F.2d at 569.

Plaintiff has not alleged that any of the named defendants acted with deliberate indifference to a substantial risk of harm. While he does argue that defendants ignored his

---

[2] Indeed, a generous interpretation of the complaint suggests that plaintiff's own negligence caused his accidental fall.

request to return his tennis shoes, "deliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County. TX*, 245 F.3d at 459. See *Whitley v. Albers*, 475 U.S. at 319 (holding that a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's ... safety"); see also, *Bradley v. Puckett*, 157 F.3d at 1025 (stating that it is "obduracy and wantonness, not inadvertence or error in good faith" which characterizes conduct prohibited by the Eighth Amendment); see also *Choate v. Lockhart*, 7 F.3d 1370 (8th Cir.1993) (holding that there was no evidence of prison official's deliberate indifference to safety where an inmate was forced to work on a roof with a saw and the prison did not provide toe rails, rubber- soled shoes, or scaffolding); *Warren v. Missouri*, 995 F.2d 130 (8th Cir.1993) (holding that there was no evidence of deliberate indifference where an inmate was forced to work on an industrial table saw and the prison failed to equip the saw with safety features despite knowledge of prior injuries from the saw); and *Bibbs v. Armontrout*, 943 F.2d 26 (8th Cir.1991) (finding insufficient evidence of deliberate indifference where an inmate was forced to work on a machine without safety guards because there was no evidence that prison officials "willfully overlooked the condition of the equipment" or that officials knew the safety guards were not used on the machine).

In short, the undersigned concludes that plaintiff's claims regarding his December 6, 2006, accident appear to sound in negligence, and as previously noted, mere negligence is not a theory for affixing liability under § 1983. *Daniels v. Williams*, 474 U.S. at 33. See *Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir.1996) (holding that in the workplace safety context, mere negligence or inadvertence is insufficient to demonstrate deliberate indifference).

Many acts that might constitute a violation of state tort law do not rise to the level of a constitutional violation. *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir.1988).

Plaintiff's claims thus lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### 3. Medical Care and Deliberate Indifference

Plaintiff also claims that he has been denied adequate medical care. Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th

Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. The information submitted by the plaintiff does not reveal that he was ever subject to a "substantial risk of serious harm." At worst, it appears that plaintiff suffered a back strain.

More importantly, plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that the defendants actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not the defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff's allegations of fact have been accepted as true for the purposes of this Report. The complaint reveals that when plaintiff complained about a medical condition to the defendants, he was afforded some medical treatment. Indeed, he was taken immediately to a local hospital for diagnosis and treatment following his accident. Further, plaintiff implies that he

was examined and treated by the UPDC medical staff on subsequent occasions. Plaintiff, of course, disagrees with the efficacy of the treatment provided. He suggests that unspecified pain medications would have proven more effective than the Ibuprofen provided by the UPDC; however, this disagreement with treatment is insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Further, to the extent that plaintiff complains that he was charged for medical services, such an allegation fails to state a claim for which relief might be afforded. The policy or procedure he complains of is apparently a "co-pay" policy or fee-for-service program which requires inmates to bear part of the cost of their medical treatment. Courts have found these polices constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir.1997) (co-pay policy); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404 (9th Cir.1985) (co-pay policy); *Cameron v. Sarraf*, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.) (co-pay policy); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); *Johnson v. Dept. of Public Safety and Correctional Services,* 885 F.Supp. 817 (D.Md.1995) (co-pay policy). See also *Hudgins v. DeBruyn*, 922 F.Supp. 144, 151 (S.D.Ind.1996) (prison policy which provided that inmates could obtain over-the-counter medicine at cost from institution commissary or as part of necessary treatment for serious medical condition did not constitute cruel and unusual punishment even though former policy generally provided medication free of charge in conjunction with inmate's use of sick-call process; inmate's serious medical needs would be met whether inmate was indigent or not).

Nothing in Constitution guarantees inmates the right to be entirely free from costs associated with medical treatment. *Reynolds*, 128 F.3d, at 175. It is only when necessary medical care is denied to impecunious inmates that the Eighth Amendment is implicated. See, e.g., *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992) (affirming district court finding that statute with no exceptions to the co-payment requirement would be unconstitutional because it would deprive an inmate of meaningful access to medical care); *Johnson*, 885 F.Supp. at 820 (holding statute constitutional "because the policy mandates that no one shall be refused treatment for an inability to pay, [and] the co-pay policy will not result in a denial of care, even for inmates who abuse the system"). While plaintiff complains of the policy, he does not allege that needed medical services were denied to him.

In short, the facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claim is therefore frivolous and dismissal on that basis is recommended.

### *4. Due Process Claims*

In the state court pleading filed with plaintiff's complaint [doc. 1, pp. 6-11], plaintiff also complained that he was forced to "stay in the hole 32 days but did not receive any type of disciplinary report." In the wake of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995), the ambit of a prisoner's potential Fourteenth Amendment due process liberty claims has been dramatically narrowed. A prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the <u>duration</u> of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th

Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).

Plaintiff lost no good time by virtue of the allegedly inadequate disciplinary proceeding which resulted in his extended stay in "the hole"; therefore, he has no federally protected due process rights in connection with the proceeding. Consequently, plaintiff's claim against the defendants lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

*5. Equal Protection Claims*

Finally, in the state court pleading, plaintiff also complained that male inmates are the victims of discrimination with respect to the use of the elevators at the Union Parish Courthouse. To the extent that plaintiff seeks to raise this claim in his civil rights complaint, he again fails to state a claim for which relief might be granted. To state an equal protection claim, a civil rights plaintiff must allege, *inter alia*, that similarly situated individuals have been treated differently. See *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992). The inquiry focuses on whether the plaintiff is similarly situated to another group for purposes of the challenged government action. See *Klinger v. Dep't. of Corrections*, 31 F.3d 727 (8th Cir.1994). Any number of non-discriminatory reasons could be advanced for the practice complained of. Plaintiff simply has not stated a claim for gender discrimination.

*6. Conclusion and Recommendation*

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted

pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe Louisiana, October 29, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

12